ELISHA F. SMITH, Respondent, v. THE AMERICAN COAL COM-
PANY OF ALLEGHANY COUNTY, impleaded, &c., Appellant.

(GENERAL TERM, FIRST DEPARTMENT, 1873.)

The delivery of a stock certificate, as collateral security for an indebted-
ness, with the usual power of attorney indorsed thereon, signed by the
owner, in blank, transfers all the owner's title, both legal and equitable,
subject only to liens or claims of the corporation; and after such delivery
the holder of the certificate and power may alone cause a transfer on
the books of the company.

A sale of the original owner's interest in the stock, made after such delivery,
under an attachment issued in an action against him, passes no title to
the purchaser; and the company having transferred the stock upon
their books to such purchaser, without surrender of the certificate, are
liable to the real owner thereof.

And this is so, although the by-laws of the company provide that "no
transfer of stock shall be valid unless made upon the books of the com-
pany by the person owning the stock or his attorney."

But the company, having no notice of transfer of the certificate, are pro-
tected in payment of dividends to the original owner, and in admitting
him to vote on the stock, until transfer on its books.

THIS is an appeal from a judgment, entered on the report
of a referee.

The defendant, the American Coal Company, is a corpora-
tion under the laws of Maryland, having its principal office in
the city of New York.

On the 4th April, 1856, the company issued to Hill Gowdy
a certificate (No. 134) for 100 shares of its capital stock,
being of the par of $25, and the same was so entered on its
books.

On the 30th August, 1859, Gowdy, at the city of New
York, signed a blank power of attorney on the back of said
certificate and delivered it to C. S. Martin, of New York
(together with other securities), as collateral security for an
indebtedness then and theretofore due from said Gowdy to
said Martin.

The power of attorney was not filled up, but remained in

blank until about the time it was presented to the company, in 1864.

On the 9th January, 1864, this certificate, No. 134, with the blanks in the power of attorney on the back, dated November 20, 1861, was, for the first time, presented at the company's office, by a Mr. Gregory, a broker, and he asked the company "if it was all right," to which the secretary of the company replied: "No, that stock has been attached by the sheriff and sold, and transferred by order of the Supreme Court, and the certificate you present is worthless." Kane, a witness, testified that the plaintiff gave him the certificate of stock to sell, and he gave it to Gregory.

When presented by Gregory, it was the first time the certificate had, since its issue, been seen by the company or its officers, or presented at its office, or any demand made, or any notice given of its transfer, or of the power of attorney.

The reply so made to Mr. Gregory by the secretary was true.

On the 28th September, 1863, an attachment in the action of Moses B. Bramhall against said Hill Gowdy was issued out of this court in due form, and the sheriff of New York had thereunder attached this stock represented by said certificate No 134 and then standing to him on the books of the company.

Said action proceeded in due form to judgment and execution, the judgment having been docketed December 15, 1863, when execution issued, and the sheriff, by virtue thereof, sold the said stock, so attached in said action, on the 26th December, 1863; and the same was purchased at the sheriff's sale by Henry L. Gilbert, and was transferred to him by the sheriff on the books of the company.

At the time of the attachment of the stock, and also at the time of its sale on the execution, and its transfer thereunder to Gilbert, it stood on the books of the company in the name of Hill Gowdy, no transfer having been made on the books of the company to any one, and no application for a transfer having been made to the company, and no notice was ever given

Smith *v.* American Coal Co. of Alleghany County.

to the company that any such power of attorney had been given by Gowdy.

In 1860, Martin failed. His property was assigned, and this certificate of stock was "put in," as a witness expressed it, "with the assignment to the plaintiff."

The referee held as matter of law:

That the right and title to said stock passed from said Gowdy to said Martin on or about the thirtieth day of August, 1859, at the time of the transfer and delivery to said Martin of the certificate thereof, and the assignment and power of attorney, as above stated.

That the right and title to said stocks passed from said Martin to the plaintiff herein at the time of the transfer and delivery of said certificate, and of the assignment and power of attorney to him, in or about the year 1860, and he became owner of the same at that time.

That plaintiff is entitled to recover from the defendant, the American Coal Company of Alleghany county, the value of said stock in said month of March, 1864, $2,750, and interest on that sum from the last day of March, 1864, which, at the date of his report, amounted in the whole to $4,295.27.

Judgment was entered upon the report, and the American Coal Company appealed to the General Term.

*L. R. Marsh,* for the appellant.

*Edward Fitch,* for the respondent.

Present—INGRAHAM, P. J., and FANCHER, J.

FANCHER, J. When Gowdy, the owner of the stock, on the 30th August, 1859, signed the power of attorney, and delivered the certificate, with the power indorsed, to his creditor Martin, he transferred all his title, legal and equitable, to the stock, and, by virtue of the power and of the transfer contained in the same instrument, the holder of the certificate and power alone had authority thereafter to cause a transfer to be made on the books of the corporation. As Gowdy had

thus parted with all his interest in the stock, he had no interest in it which could be the subject of attachment, after he parted with it. The attachment issued at the suit of Bramhall, on the 28th September, 1863, was ineffectual to reach the stock or any interest in it, and the sale by the sheriff of the assumed interest and title of Gowdy in the stock amounted to nothing. There was no interest or title of Gowdy in or to the stock which could be the subject of the attachment or the sale made by the sheriff, and the transfer by the sheriff conveyed no interest in or title to the stock to the purchaser.

In *McNeil* v. *Tenth National Bank* (46 N. Y., 331), RAPALLO, J., in delivering the opinion of the court, said: "It has also been settled by repeated adjudications that, as between the parties, the delivery of the certificate, with the assignment and power indorsed, passes the entire title, legal and equitable, in the shares, notwithstanding that by the terms of the charter or by-laws of the corporation the stock is declared to be transferable only on its books; that such provisions are intended solely for the protection of the corporation, and can be waived or asserted at its pleasure, and that no effect is given to them except for the protection of the corporation; that they do not incapacitate the shareholder from parting with his interest, and that his assignment, not on the books, passes the entire legal title to the stock, subject only to such liens or claims as the corporation may have upon it, and excepting the right of voting at elections, etc."

By section 234 of the Code it is provided that the rights or shares which a defendant may have in the stock of any corporation shall be liable to be attached and levied upon and sold to satisfy the judgment and execution. But this provision of law cannot aid an attachment against a defendant who has no rights or shares in the stock of a corporation. If, previous to the issuing of the attachment, the defendant has assigned all his interest in the rights or shares, and delivered over the certificate with transfer and power, it is thenceforth the holder of these *indicia* of title who is possessed of the property in the shares, and not the original stockholder.

Smith v. American Coal Co. of Alleghany County.

It is claimed by the defendant that by a provision in the by-laws of the corporation " no transfer of stock shall be valid unless made upon the books of the company by the person owning the stock or his attorney," and that because of that provision no title could pass to the stock unless the transfer was thus made on the books of the company. The doctrine of the Court of Appeals is, that the provision referred to is intended solely for the protection of the corporation, and does not incapacitate the shareholder from parting with his interest, and that his transfer, though not on the books of the company, passes the entire legal title to the stock, subject to any liens or claims of the corporation. Until the transfer be made on the books of the corporation it would be protected in the payment of dividends to the original stockholder, assuming that no notice of his transfer had been given, and the corporation would also be protected in admitting the original stockholder who appeared as owner on the books to vote at elections. But if an act were suffered by the corporation that invested a third party with the ownership of the shares, without the production and surrender of the original certificate, it would be justly and properly liable to the real owner of the certificate. It is the duty and right of the corporation to resist a transfer of stock on its books without the production and surrender of the outstanding certificate representing the stock. The corporation would be protected in such resistance unless it be shown that the certificate has been lost or destroyed, and proof is made that the real owner of it has applied for a new certificate.

When, therefore, the plaintiff, as the owner and holder of the certificate in question, applied to the defendant for a transfer of the shares, and produced the certificate, with the power of the original stockholder, he was entitled to have the transfer made. The refusal of the corporation gave him a right of action for his damages. (*Com. Bank of Buffalo* v. *Kortright*, 22 Wend., 348.)

We think the judgment should be affirmed.