## MIDDLEBROOK *vs.* THE MERCHANTS' BANK.

Our courts will not recognize the right of a foreign executor or administrator *to sue* in the courts of this state under or by virtue of his foreign letters testamentary or of administration.

But if foreign executors, with full authority to do so, transfer to another stock in a bank located here, and execute a power of attorney for its transfer on the books of the bank, the officers of the corporation are bound to recognize the assignee's title to the stock, and his right to have it transferred to him on the transfer books; and in case of refusal, the bank may be decreed to make the transfer, where there are no rights of domestic creditors to be affected.

APPEAL from a judgment entered at a special term, after a trial at the circuit before the judge without a jury. The action was brought to compel the defendants to allow certain shares of its stock to be transferred to the plaintiff. The judge found the following facts, viz: That Robert Middlebrook, late a resident of the town of Trumbull, within the probate district of Bridgeport, in the county of Fairfield, and state of Connecticut, died at said Trumbull on or about the 15th day of May, 1861. That at the time of his death he was the owner of one hundred shares of the capital stock of the said defendants, of the par value of $50 per share, and held the defendants' certificates for the same, which shares were declared to be transferable on the books of said defendants, by himself or his attorney, on the surrender of the said certificates. That on the 15th day of April, 1861, said Robert Middlebrook made and published his last will and testament in writing, under his hand and seal, and thereby, among other things, appointed Mallett Seeley, William M. Curtis and James R. Middlebrook executors of his said last will and testament. That on the 22d day of May, 1861, the executors exhibited the said last will and testament in the court of probate for the said district of Bridgeport, the jurisdiction whereof belonged to the said court of probate, and duly proved the said will, and the same was approved and ordered to be recorded by the said court of probate, according to the

laws of the state of Connecticut, and the said executors were duly qualified as such executors, according to the laws of that state, and accepted said trust. That in and by the said will, among other things, the said Robert Middlebrook gave to his son, the plaintiff, $16,000 in bank stock, which he, the said plaintiff, was, according to the provisions of the said will, to select from a large amount of bank stock owned by the testator, and which was to be appraised. That the plaintiff, among other shares of bank stock, selected fifty shares of the stock of the defendants, being one half of the shares of stock so owned by the testator in the said Merchants' Bank, and the same were appraised and inventoried by the executors, pursuant to the directions in the will, and the executors assented to such selection and appraisal. And that afterward the executors executed and delivered to the plaintiff, at Bridgeport, a bill of sale and assignment, under their hands and seals, of fifty shares, parcel of the said one hundred shares of stock, and delivered to him the certificates of the said fifty shares of stock, and did also appoint, under their hands and seals, Ebenezer Seeley their attorney, irrevocable, for them, and in their names, to transfer the said shares on the transfer books of the defendants into the name of the plaintiff. That the defendants had full notice of all the facts aforesaid. That the said attorney, so appointed and empowered to transfer the shares on the said books, on the 21st day of March, 1862, applied to the defendants, at their banking house in the city of New York, and presented the said instrument of sale and assignment of the said fifty shares and the said power of attorney, and also the certificates of the said fifty shares, and offered to surrender them to the defendants, and demanded leave to transfer the same on the transfer books of the defendants into the name of the plaintiff. That the defendants refused to allow the said transfer to be made, alleging that said executors had not power to transfer, or authorize any other person to transfer the said sheres on the books of the defendants, without first tak-

ing out letters testamentary or of administration in the state of New York. That after the death of said Robert Middlebrook, and before the execution of the said bill of sale to the plaintiff, three half-yearly dividends were declared upon the capital stock of the said bank, and were paid to the said executors, on proof to the bank of the will and the granting of said letters testamentary. That no letters testamentary or of administration of the will, or upon the estate of said Robert Middlebrook, were ever taken out by the said executors, or by any other person, in the state of New York. That there were no debts due from the deceased to any person residing in this state, nor were there any claims of any kind upon the estate of the deceased in favor of any person residing in this state, which have been presented to the executors. That the estate of the deceased had been settled in the said probate court by the executors. That the defendants are a banking association or incorporation, formed and organized under the general banking laws of the state of New York, by articles of association dated the 15th day of January, 1856, and signed by said Robert Middlebrook, which articles provide (among other things) that the place of business of the defendants shall be in the city of New York, and that suitable books shall be kept for the registry and transfer of the shares of their capital stock, and that every transfer, to be valid, shall be made on the books of the association, and shall be signed by the shareholder, his attorney or legal representative; and that since said organization of the defendants, their place of business has been and is in the city of New York, and books of registry and transfer of the shares of their capital stock have been and are kept at their said place of business in the city of New York. And, as conclusions of law, the judge found and decided: 1st. That the executors, under and by virtue of the will and the proceedings in the probate court, became the owners of the said shares of stock, and had a right to sell and dispose of the same and authorize their transfer on the books of the

bank.   2d. That the said plaintiff, under the said will and the selection and appraisal aforesaid, became the owner of the said fifty shares, and had a right to require of the executors a formal transfer of the same on the transfer books of the defendant, from the name of the said Robert Middlebrook into his own name, and that under and by virtue of the said transfer, assignment and power of attorney, the plaintiff acquired the right to have the said stock transferred into his own name on the books of the defendants.   3d. That the plaintiff is entitled to the judgment and decree of this court directing the defendants to transfer the said fifty shares of stock into his own name on their books, and to his costs in this action.

Judgment was entered accordingly, and the defendant appealed.

*B. W. Bonney*, for the appellant.   I. The Merchants' Bank is a corporation created by and under the laws of New York, having its only locality in the city of New York, where alone transfers of its stock can be made.   Therefore the property in question has a *fixed situs* in the city and state of New York, is peculiarly subject to the laws of New York, and, in that respect, is distinguishable from other personal property.

II. It is well settled that no administrator or executor can maintain an action in the courts of the state of New York, without first obtaining letters testamentary or of administration under the laws of the state.   No letters obtained in any foreign country or foreign state are sufficient to authorize the maintenance of an action here.   (*Campbell* v. *Tousey*, 7 *Cowen*, 64.   *Morrell* v. *Dickey*, 1 *John. Ch. R.* 156.   *Chapman* v. *Fish*, 6 *Hill*, 554.   *Isham* v. *Gibbons*, 1 *Bradf.* 69.)

III. Letters testamentary or of administration, issued in, and by authority of, a foreign state or foreign country, of the will or upon the estate of a decedent resident in such state or country and there deceased, give to the executor or

administrator therein named no authority or right to trans-
fer, control, demand or maintain action for, any stock or
other personal property having a situs or locality in this
state, or which is here held; to obtain any such authority or
right, the executor or administrator must obtain letters in
this state. (*Williams* v. *Storrs*, 6 *John. Ch. R.* 353.
*Chapman* v. *Fish*, 6 *Hill*, 554. *Vroom, adm'x*, v. *Van
Horne*, 10 *Paige*, 549. *Parsons* v. *Lyman*, 20 *N. Y. Rep.*
103. *Riley* v. *Kiley*, 3 *Day's Conn. R.* 74. *Vaughan* v.
*Barrett*, 5 *Verm. R.* 333. *Lee* v. *Havens, Brayton*, 93.
2 *R. S.* 71, § 17. *Thomas, ex'r*, v. *Cameron*, 16 *Wend.* 579.)

IV. The executors of Robert Middlebrook, having no right
to or interest in the stock in question, or authority to control
or transfer such stock, except under his will, could not show
title thereto, or maintain any action to enforce their alleged
rights, without first taking letters testamentary within this
state. The bank was created by the law of New York, and,
by force of that law and the terms of the charter under it,
the stock of the bank, as well as the bank itself, has *a fixed
locality here*, and can be transferred only in this state.

V. The plaintiff contends, that the executors, although
without power themselves to transfer the stock on the books,
or to maintain any action for it or for its proceeds, have, by
a conveyance, executed in Connecticut, and by a power of
attorney in such conveyance contained, given to and vested in
other persons, such title to and power over the stock, as ena-
bles them, by action, to compel the bank to make or permit
the transfer; that is, that the executors could give and have
given to their transferee and agent, greater rights and powers
than they had themselves.

VI. The rights of creditors and others, resident in New
York, require for their protection that administration of the
assets of all deceased persons found in this state shall be had
here. Except by due publication of notice pursuant to stat-
ute, it cannot be ascertained whether or not there are, in this
state, creditors of any decedent, entitled to protection and

payment here; nor can such creditors be otherwise informed to whom, where or when to present their claims. Besides, it would subject the corporations of this state to great hardship, and be manifestly unjust to them, to hold that, upon the production of the probate of a will, purporting to have been made by a stockholder resident in any foreign country and there to have been proved, and letters testamentary granted thereon, the corporation must forthwith determine as to the validity and sufficiency of such will and letters to authorize the transfer of their stock.

VII. It cannot be deemed a hardship upon persons claiming through decedents who have resided in foreign states or foreign countries, and have made investments in the stocks of corporations here, to require them to show title in such stocks, in the same manner in which residents here are required to show their title, and under authority derived through the constituted tribunals of the state.

VIII. The right claimed by the plaintiff is not supported by any recognized legal principle, or by authority by which this court is bound; and the principle for which he contends is in conflict with the rights of residents here. (*Pond, adm'r,* v. *Makepeace,* 2 *Metc.* 114. *Gleim* v. *Smith,* 2 *Gill & John.* 493. *Dayton's Sur.* 3d ed. 194. *Willing* v. *Perrot,* 5 *Rawle,* 264. *Stearns* v. *Burnham,* 5 *Maine Rep.* 261. *Thompson* v. *Wilson,* 2 *N. Hamp. Rep.* 291.)

*E. Seelye,* for the respondent. I. On the death of the testator the title to his personal property, wherever situated, vests immediately in his executor. That is the uniform doctrine of the common law, in England and in this country, recognized by the books every where. (*Babcock* v. *Booth,* 2 *Hill,* 181. *Valentine* v. *Jackson,* 9 *Wend.* 302. *Cole* v. *Miles,* 17 *Eng. L. and Eq. Rep.* 582. *Franklin* v. *Bank of England,* 9 *B. & C.* 156. *S. C.* 17 *E. C. L. R.* 78.)

II. This ownership of personal property involves the right to dispose of it, and the executor is bound to dispose of it in

virtue of his office; and if the will requires any particular disposition of any part of the estate, it thereupon becomes the duty of the executor to carry such provision into effect.

III. In the present case the plaintiff was entitled to certain shares of bank stock by the terms of his father's will. He had a right to make a selection out of all his father's bank stock of a certain amount, the value of which was to be appraised. On such selection and appraisal and their assent to it, the plaintiff had a right to require the executors to transfer the shares so selected and appraised to him; and if they had refused to do so, he would have had his legal remedy to oblige them to do it. After such selection and appraisal, and the assent thereto by the executors, the legacy became specific. These shares thereby became separated from the general property of the testator, like the cases mentioned in the books, where a certain sum of money in a certain bag or chest, or in navy or India bills, or a certain sum of money in the hands of A, or a certain balance due to the testator from his partner, which are all specific. (*See the cases and analogous ones cited in Toller's Executors,* 302.) No matter how specific a legacy may be, the title vests in the executor until he assents to the legacy. (*See Franklin* v. *Bank of England, supra.*) After such assent, the title of the legatee is absolute, and he has his remedy at law to enforce it. In the present case, therefore, it was the unquestionable duty of the executors, after their assent to the selection.and the appraisal, to transfer the shares in question to the plaintiff. This they offered to do on the books of the bank, and the bank, in violation of their clear duty, refused to allow it to be done. Thereupon the executors, by an instrument *in pais* duly executed, transferred the shares directly to the plaintiff, who, on the presentation of that instrument to the defendants, became entitled to transfer the shares into his own name. And the defendants refused to allow him to do that. It only remained for him, therefore, to bring his action, as every party must do whose rights are withheld.

IV. The defendants, after paying the dividends on the testator's bank shares to the executors, and recognizing their title as such executors to receive those dividends, are estopped from denying their right to the shares themselves. If the dividends belonged to the executors, as the defendants admitted, so also did the capital stock of the bank, of which those dividends were the fruit. The bank cannot be allowed capriciously and perversely to separate the one from the other; admitting the right of the executors to the dividends, and denying it as to the stock itself.

V. Every principle necessary to sustain the plaintiff's right in the present case, is recognized throughout the very elaborate judgment of the court of appeals in the case of *Parsons* v. *Lyman,* (20 *N. Y. Rep.* 103.) And the opinion of Mr. Justice Clerke (*pp.* 124–127) contains every thing which is required to support the ruling in this case.

VI. It is not denied on the part of the plaintiff, that if a man brings an action as executor in this state, no evidence of his executorship, other than of letters testamentary granted here, will be received. That is the technical rule of practice, and that is the extent of the rule. In *Harper* v. *Butler,* (2 *Peters' S. C. Rep.* 239,) exception was taken to the plaintiff's right to sustain the action, on the ground that he derived his title to the promissory note on which the suit was brought, from an executor appointed under the laws of another state. The court, by Marshall, C. J. overruled the exception, holding that as it was not necessary for the plaintiff to sue as executor, though he derived his title from the executor, he might, as assignee, sue in his own name. It was said of this case in the court below, that it was not very much argued. The answer to that suggestion is,. that there was no question presented which called for much discussion, or admitted of any illustration clearer than the case itself. In *Peterson* v. *The Chemical Bank,* decided by the superior court at general term, February 12, 1864, Robertson, C. J. giving the opinion of the court, the same question was presented. An adminis-

trator, with the will annexed, under a grant from the court of probate of New Haven, had assigned a deposit made by the deceased, to the plaintiff, who brought his action in his own right, and it was held he was entitled to recover. There never was any serious question as to the right of a plaintiff, under the circumstances of the present case. Some few corporations, feeling their power, have, from time to time, held out, and obliged needy parties to subject themselves to the expense, vexation and delay of taking out letters testamentary in this state; which, after being granted, are, in truth, no higher evidence of such plaintiff's right than the record of a similar grant by the probate court of a neighboring state, exemplified according to the act of congress. It is quite time that the courts should put an end to this useless annoyance.

SUTHERLAND, J. It is not necessary to examine or determine the question whether the personal estate of the testator, on his death, vested immediately in his executors, the plaintiff's assignors, and before the will was proved, and they qualified as executors. The bank put its refusal to permit the transfer solely on the ground that letters testamentary, or of administration, had not been taken out in the state of New York. Before the assignment to the plaintiff, and the refusal of the bank to permit the transfer to him under the power of attorney, the executors had exhibited to the officers of the bank documentary evidence of their title as foreign executors. The ground upon which the bank refused to permit the transfer to the plaintiff, and the ground upon which the counsel of the bank upon the argument insisted it was justified in so refusing, was, substantially, that the bank was not obliged to recognize the title of a foreign executor. In this I think the bank and its counsel were mistaken.

The cases in this state only show, I think, that our courts will not recognize the right of a foreign executor or administrator *to sue* in the courts of this state under or by virtue of his foreign letters testamentary or of administration. (*See*

*Parsons* v. *Lyman,* 20 *N. Y. Rep.* 103, *and cases there cited.*)

I suppose there is no reasonable ground for saying that the title to the testator's bank stock in this state, as well as to all his chattels and personal estate, wherever situate or being, vested in his executors, either by the will on his death, or by the issuing of letters testamentary to them, or both. Having the title to the bank stock in question, they had a right to assign it to the plaintiff, and to execute the power of attorney authorizing the transfer to him.

I do not know that it has ever been questioned but that even a foreign statutory bankrupt proceeding passed the title to the bankrupt's property here, as between the bankrupt and his assignees. The cases in this state only go to show, I think, that the plaintiff's assignors, as Connecticut executors, could not have maintained an action against the bank for refusing to permit them to transfer the shares. Perhaps you may say that the bank was not *legally* bound to permit the transfer on the demand of the executors, before the assignment to the plaintiff, because the executors could not as foreign executors bring an action for such refusal, *in their own names as such executors;* but if the executors could and did transfer the shares of stock to the plaintiffs, and could and did execute the power of attorney for its transfer on the transfer books, the bank, I think, was bound to recognize the plaintiff's title to the stock and his right to have it transferred to him on the transfer books; and for refusing to permit such transfer, I think the bank is liable in this action, brought in the name of the assignee of the executors.

It is utterly immaterial whether the assignment to the plaintiff, and the power of attorney for the transfer of the stock, were executed in Connecticut or in this state.

The judgment should be affirmed, with costs.

LEONARD, J. The law of the foreign domicil of the testator and the executors governs in respect to the transfer of

personal property, except, perhaps, where the transfer inter-feres with the remedy of domestic creditors in the courts of the state where the property is situated, I concur. The judgment should be affirmed, with costs.

CLERKE, J. also concurred.

Judgment affirmed.

[NEW YORK GENERAL TERM, May 2, 1864. *Leonard, Clerke* and *Sutherland*, Justices.]