(35 Misc. Rep. 750.)

RINGLER v. JETTER et al.

(Supreme Court, Special Term, New York County.   September, 1901.)

SPECIFIC PERFORMANCE—LACHES.

    Where plaintiff in an action to compel specific performance has waited for 33 months, during which time the condition of affairs has changed, and then sues only at the instance of parties who have indemnified him against an unfavorable result of the action, and are to share in the profits, the suit will be dismissed.

Action by Frederick A. Ringler against J. Edward Jetter and others to compel specific performance.   Complaint dismissed.

James L. Bishop, R. F. Rabe, and Edward Miehling, for plaintiff.
John M. Bowers and Samson Lachman, for defendant J. Edward Jetter.

R. S. Ransom, for defendant Caroline Hachemeister, individually and as executrix.

CLARKE, J.   This is an action to compel the specific performance of a contract for the sale and transfer of 2,000 shares of the corporate stock of George Ringler & Co.   The brewing business of the corporation was formerly carried on by a copartnership, two members of which were George Ringler and Christian Hachemeister. George Ringler died June 4, 1889.   Plaintiff was his brother, and one of his executors.   Shortly after the death of George Ringler, a corporation was formed to carry on the business, with a capital stock of $600,000 and a bonded indebtedness of $400,000.   Plaintiff was made president of this corporation, and continued to occupy that position from June, 1889, to October, 1895, when he retired, and transferred his stock.   Christian Hachemeister died in 1896, and his last will and testament was duly probated April 2, 1896, wherein he appointed J. Edward Jetter, Henry Hachemeister, and Caroline Hachemeister, his wife, executors, and whereby he bequeathed to his said wife the 2,000 shares of stock belonging to him at the time of his death, which shares were duly assigned and transferred by the executors to her.   At the time of the execution of the contract at bar the entire capital stock of the company was held in the immediate families of George Ringler and Christian Hachemeister, both deceased.   The defendant J. Edward Jetter married

the daughter of Christian Hachemeister, and George F. Jetter, his brother, married the daughter of George Ringler. Mrs. Hachemeister, the widow, held 2,000 shares; Henry Hachemeister, her son, held 500 shares; William G. Ringler, son of George Ringler, held 1,500 shares; Rosa Jetter, daughter of George Ringler, in connection with her husband, George F. Jetter, held 1,500 shares; and Mrs. J. Edward Jetter, the daughter of Caroline Hachemeister, held 500 shares. It was a close family corporation. Its shares were not listed on any exchange, and were not dealt in, and were not to be obtained by the public at large, and, while intrinsically valuable, had no quotable or market value, as that term is understood in regard to shares which are so listed and dealt in. On May 20, 1897, Mrs. Caroline Hachemeister, who at that time felt aggrieved at the conduct of her children in the management of the brewery towards her and her interests, and the plaintiff, Frederick A. Ringler, executed a sealed instrument, under the terms of which, in consideration of the sum of $250, Mrs. Hachemeister gave to Mr. Ringler the option to purchase at any time within eight months from date thereof the said 2,000 shares of stock at the price of $100 per share, payable $5,000 upon delivery of the stock, and the balance, $195,000, in twenty notes, one payable each six months, and bearing interest at the rate of 5 per cent., and to be secured by deposit of the stock. The contract further provided that, if Ringler should assign a half interest in said option to any other person, 10 of the notes should be made by the party to whom such half interest should be assigned, and indorsed by Ringler, and the other 10 notes made by Ringler, and indorsed by the other party. The $250 was thereupon paid by plaintiff's check to Mrs. Caroline Hachemeister's order, and received, indorsed, and banked by her. On the same day plaintiff and Mrs. Hachemeister's son, Henry, executed a sealed instrument, by which, after reciting the terms of the contract above set forth, and for the expressed consideration of $125, Ringler sold, assigned, and transferred to Henry Hachemeister one-half interest in and to said option, and all the rights, privileges, and benefits thereunder, upon the expressed condition, however, that said Henry Hachemeister, whenever called upon so to do, should execute 10 of the notes and indorse 10 of the others, and bear and pay one-half of the cash to be paid under the provisions of the agreement. On the 6th of December, 1897, and before the expiration of said option, Mrs. Hachemeister transferred, by indorsement on the back of her certificate of stock, 1,000 shares to Henry Hachemeister and 1,000 shares to Elizabeth Jetter (wife of J. Edward Jetter), her son and daughter; and on the same day certificates were issued to each. On December 10, 1897, Mrs. Jetter transferred her certificate to her husband by indorsement, and the same day a certificate was issued to him. On the 12th of January, 1898, and a few days before the expiration of the option, plaintiff—Henry Hachemeister having refused to join, though requested, under his option—tendered to Mrs. Hachemeister the $5,000 in cash and his own notes for $195,000, as provided in the contract, and demanded performance on her part. Mrs. Hachemeister refused to accept the

cash and notes, saying she had changed her mind, that she was
about to bring suit against the executors, that she thought the stock
had been sold too cheap, and she was not ready and willing to per-
form.   Subsequently Mrs. Hachemeister brought an action to re-
cover from her children the 2,000 shares of stock transferred on
the 6th of December, 1897, upon the ground that no consideration
had passed therefor, and that she had been deceived, not intending
to transfer, but merely to aid in getting the books straight.   Said
action came on for trial in March, 1899, and before its conclusion a
settlement was made, and the case discontinued.   By the written
terms of settlement, and upon substantial consideration, the title
in the 2,000 shares of stock was confirmed in the children.   October
30, 1900, plaintiff brought the suit at bar.

It is quite evident that there has been painful and serious family
discord in the management and control of this family concern, and
that the stock of Mrs. Hachemeister, a simple-minded, elderly
German woman, with a very limited knowledge of English and of
business, has been the object of a fierce contention for control.
Methods have been used on both sides which cannot meet the ap-
proval of the court.   From the admission in the answer of Mrs.
Hachemeister and the evidence I find no ground for declaring the
original contract or option of May 20, 1897, fraudulent, although
the price agreed upon, the time the option had to run, the amount
paid, and the failure to call in disinterested advice would of itself
cause the court to hesitate in granting a decree for specific per-
formance.   While the general rule is for courts of equity not to en-
tertain jurisdiction for a specific performance on the sale of stock,
it is also true that cases of a peculiar stock may easily be supposed
where courts of equity might still feel themselves bound to decree
a specific performance, upon the ground that from its nature it has
a peculiar value, and is incapable of compensation by damages.
Cushman v. Jewelry Co., 76 N. Y. 365, 32 Am. Rep. 315.   This stock
perhaps falls within the exception.   But it appears that on the 8th
day of December, 1897, Mrs. Hachemeister caused the $250 received
by her to be returned to plaintiff, with the statement that she had
settled her family differences; and that on the 12th of January, 1898,
she refused to carry out her part of the contract of May 20, 1897.
Plaintiff's right of action under the option then accrued.   But he
did nothing.   Thereafter, as the result of the settlement of the suit
brought by Mrs. Hachemeister against her children, defendant
Jetter became obligated to her for large and continuous payments
during her life.   This settlement was in March, 1899, and still the
plaintiff did nothing.   It was not until October, 1900, when there
was an active contest in the management of the company for control,
and upon receiving a bond of indemnity, which can be properly char-
acterized as extraordinary, that this suit was brought.   William G.
Ringler, who had been president of the company, but who had been
voted out of office, and so lost his salary, and Henry Hachemeister,
who, under the terms of the option, could have claimed 1,000 shares,
and who, by the settlement made, had received 1,000 shares, and
therefore whose own interests were the same whichever way the case

went, executed an instrument under seal to this plaintiff, which, after setting forth the option and the fact of the commencement of this suit, proceeded:

"Whereas, it appears under and in pursuance of an agreement entered into between the said Frederick A. Ringler, Henry Hachemeister, and William G. Ringler before the commencement of this action, that the beneficial result of said suit will largely inure to the benefit of said Henry Hachemeister and William G. Ringler; and it further appearing that in the event of a successful determination of said suit said Frederick A. Ringler will be compelled to execute and deliver certain promissory notes as provided in said contract, and the said Frederick A. Ringler having signified his intention to proceed with said suit, provided he be indemnified and held harmless by said William G. Ringler and Henry Hachemeister against any claim arising out of said suit for attorney's fees, costs, or damages of any kind; and whereas, said William G. Ringler and Henry Hachemeister have agreed to co-operate with said Frederick A. Ringler in bringing said suit to a successful determination: Now, therefore, in consideration of the premises," ·etc., "they hereby promise, covenant, and agree that they will indemnify and hold him harmless from any claim, of whatever kind or nature, arising out of said suit; that they will carry out the agreement entered into between said Frederick A. Ringler and Henry Hachemeister, and that, in the event of a failure of said suit by reasons of matters of law, said Henry Hachemeister and William G. Ringler will pay all costs and damages arising out of said suit; and, further, that in the event of a failure on the part of said William G. Ringler and Henry Hachemeister to carry out the agreement entered into before the commencement of said action as herein referred to, said William G. Ringler and Henry Hachemeister will each pay to said Frederick A. Ringler, as settled and liquidated damages, the sum of $25,000, payable on ·demand."

The moving cause for William G. Ringler's execution of that instrument was the promise of Frederick A. Ringler that, if he succeeded in getting the shares sued for, he would vote William G. Ringler back into the presidency, and the moving cause of Frederick A. Ringler's bringing this present suit was the receipt by him of that instrument, and the negotiations leading up to it to secure the control of the management of the corporation. While courts of equity do not absolutely deny their power to compel specific performance of a contract for the transfer of stock, yet, as in all equitable actions, plaintiff must be prompt,—must come into court with clean hands,—and to get equity must do equity. Under the facts of this case and familiar principles of equity jurisprudence, plaintiff having slept upon his rights from January 12, 1898, to October 30, 1900, having permitted without notice to or demand upon J. Edward Jetter, the real party defendant, material changes in the position of affairs, and having only moved at last under the promptings of others, and for their "beneficial result" upon taking this astonishing bond of indemnity, he has no standing in this court, and, whatever rights he may have under the sealed instrument alluded to, he must pursue in the proper forum against the maker thereof. He is hence dismissed, with costs. Settle decision on notice, and submit suggestions as to allowance.

Complaint dismissed, with costs.